# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| JONATHAN REISMAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ASSOCIATED FACULTIES OF THE UNIVERSITY OF MAINE, UNIVERSITY OF MAINE AT MACHIAS, and the BOARD OF TRUSTEES OF THE UNIVERSITY OF MAINE SYSTEM | ) ) ) ) ) ) ) | 1:18-cv-00307-JDL |
| | ) | |
| Defendants, and | ) | |
| | ) | |
| STATE OF MAINE | ) | |
| | ) | |
| Intervenor. | ) | |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS AND PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Jonathan Reisman, a professor at the University of Maine at Machias, challenges a state law which authorizes a faculty union elected by a majority of employees, to bargain collectively and exclusively on behalf of all employees as a violation of his First Amendment rights of speech and association. Reisman has moved for a preliminary injunction that would enjoin the Associated Faculties of the University of Maine, the union that represents Maine's public university faculty, from holding itself out as his representative, and that would enjoin the board of the University of Maine System from regarding the union as his representative and agent. The Defendants have moved to dismiss Reisman's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

# I. BACKGROUND

The University of Maine System Labor Relations Act (the "Act"), 26 M.R.S.A. § 1021, *et seq.* (West 2018), establishes the collective bargaining rights of the employees of Maine's public institutions of higher education. Plaintiff Jonathan Reisman is one such employee, serving as a professor of economics at the University of Maine at Machias (the "University"). He contends that the Act violates his First Amendment rights of free speech and association by enabling the Defendant Associated Faculties of the University of Maine (the "Union"), having been elected by a majority of employees as the bargaining agent, to bargain collectively and exclusively on behalf of all employees who comprise the bargaining unit. Reisman is not, however, a member of the Union and he disagrees with its positions on various issues of public import.

The Act provides that a majority of employees in a bargaining unit may choose to be represented by a union for purposes of collective bargaining with the University regarding "wages, hours, working conditions and contract grievance arbitration." 26 M.R.S.A. §§ 1025, 1026(1)(C). Employees are not required to be union members. *Id.* at §§ 1023(2), 1027(1)(G). A union that receives the majority of the votes is certified and "recognized by the [U]niversity . . . as the sole and exclusive bargaining agent for all of the employees in the bargaining unit." *Id.* at § 1025(2)(B). Such a union "is required to represent all the [U]niversity . . . employees within the unit without regard to membership in the organization certified as bargaining agent." *Id.* at § 1025(2)(E).

Reisman seeks a preliminary injunction under Fed. R. Civ. P. 65(a) that would enjoin the Union from holding itself out as his representative, and also enjoin the Defendant Board of Trustees of the University of Maine System (the "Board") from treating the Union as his representative and agent. In response, the Union, the Board and the University, along with the intervenor Attorney General of the State of Maine ("Maine"), move to dismiss Reisman's complaint under Fed. R. Civ. P. 12(b)(6) for failing to state a claim. Because I conclude that Reisman's complaint fails to state a claim, I deny his motion for a preliminary injunction, grant the Union's, the University and the Board's, and the State's motions to dismiss, and order the dismissal of this case.

## II. ANALYSIS

To survive a motion to dismiss, the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Rodríguez–Reyes v. Molina–Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013). In evaluating a motion to dismiss, the Court will accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *Id.* at 52-53. Determining the plausibility of a claim is a context-specific task that requires the court "to draw on its judicial experience and common sense." *Id.* at 53 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Reisman argues that the Act imposes on him "a government-appointed lobbyist who attempts to influence government on his behalf and in his name, as his agent and representative, even though he disagrees with the positions it attributes to him." ECF No. 5 at 7. This, he contends, gives rise to two First Amendment violations: First, Reisman contends that the Act violates his right to free speech because it

3

effectively compels him to speak on matters from which he chooses to refrain from speaking. *See Wooley v. Maynard,* 430 U.S. 705, 714 (1977) ("[Freedom of speech] includes both the right to speak freely and the right to refrain from speaking at all."). In his declaration filed in support of his motion, Reisman expresses his opposition to numerous positions the Union has taken on his behalf relating to, among other things, wages, hours, and conditions of employment, as well as various other positions and actions by the Union: for example, its decision to expend funds opposing the election of Maine governor Paul LePage in 2010 and 2014, and its support for presidential candidate Hilary Clinton in 2016. Second, Reisman argues that the Act violates his right of free association because it compels him to associate with the Union, an organization whose speech he chooses not to be associated with. *See Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31,* 138 S.Ct. 2448, 2463 (2018) ("The right to eschew association for expressive purposes is likewise protected."). Although Reisman does not claim that he or any particular organization he is associated with has a right to participate in bargaining sessions, he does contend that he cannot be compelled to associate with the Union "through its advocacy as his representative or agent." ECF No. 5 at 15.

Stated succinctly, Reisman's constitutional challenge to the Act is that by establishing the Union as the exclusive bargaining agent of the University's professors, the Act violates his First Amendment right of free speech and association by depriving him of the right to "decide what not to say" and by placing him in an agency relationship with the Union, thereby forcing him into an unwanted expressive association. ECF No. 38 at 5.

The Union, the University and the Board, and the State all contend that Reisman's constitutional arguments are contrary to established precedent of the Supreme Court and the First Circuit Court of Appeals: *Minn. State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271 (1984), which rejected a challenge to a Minnesota collective bargaining statute similar to the Act on grounds similar to those Reisman asserts, and *D'Agostino v. Baker*, 812 F.3d 240 (1st Cir. 2016), *cert. denied*, 136 S. Ct. 2473 (2016), which similarly rejected a challenge to the exclusive representation provisions of a Massachusetts collective bargaining statute. Reisman points, however, to a more recent Supreme Court decision—*Janus*—as having shifted the constitutional framework by requiring that a more exacting degree of judicial scrutiny be applied to statutes that are alleged to infringe on speech and associational rights. In his view, *Janus* undermines the vitality of the *Knight* and *D'Agostino* decisions.

*Knight* involved a challenge by college instructors to a Minnesota law mandating that a union representative selected as their exclusive bargaining agent concerning "the terms and conditions of employment" also be their exclusive agent in "meet and confer" sessions with school officials covering other matters outside the scope of mandatory union negotiations. 465 U.S. at 274-75. The Court upheld the statute, finding that the professors' "speech and associational rights . . . have not been infringed by [the] restriction of participation in 'meet and confer' sessions to the faculty's exclusive representative." *Id.* at 288.

Reisman attempts to distinguish *Knight*, arguing that *Knight* only addresses associational exclusion because the Minnesota statute denied professors the

5

opportunity to speak at "meet and confer" sessions, while his challenge to the Act is broader because the Act compels him to associate and speak against his beliefs. ECF No. 38 at 14. The *Knight* decision, however, is not so narrow. The Court explained that "[t]he state has in no way restrained appellees' freedom to speak on any education-related issue or their freedom to associate *or not to associate* with whom they please, including the exclusive representative." *Knight*, 465 U.S. at 288 (emphasis added). In reaching this conclusion, the Court expressly noted that, like here, the state considered the exclusive union representative's views to be the official collective position of all faculty and recognized "that not every instructor agrees with the official faculty view on every policy question." *Id.* at 276. *Knight* is therefore not distinguishable from the present case, and it forecloses Reisman's First Amendment claims.

In *D'Agostino*, the First Circuit, relying in part on *Knight*, affirmed the dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) which challenged a statutory scheme which—like the one at issue here—authorized exclusive representation in collective bargaining for public employees. 812 F.3d at 242. The First Circuit squarely rejected the plaintiffs' alleged First Amendment violation, reasoning that "exclusive bargaining representation by a democratically selected union does not, without more, violate the right of free association on the part of dissenting non-union members of the bargaining unit." *Id.* at 244. Reisman concedes that if *D'Agostino* remains controlling authority it defeats his claims. ECF No. 5 at 12-13.

As previously noted, however, Reisman also argues that *Knight* and *D'Agostino* are no longer valid in light of the Supreme Court's recent ruling in *Janus*.

6

Specifically, Reisman argues that by stating in *Janus* "that a union serv[ing] as exclusive bargaining agent for its employees [is] itself a significant impingement on associational freedoms that would not be tolerated in other contexts," the Court indicated for the first time that collective bargaining statutes do burden First Amendment rights and must therefore pass some level of heightened scrutiny. 138 S.Ct. at 2478. Because *Knight* and *D'Agostino*—finding no First Amendment burden at all—failed to subject the challenged laws to such scrutiny, Reisman contends that they are in conflict with *Janus* and do not control his claims. Reisman further argues that *D'Agostino* must be reconsidered because it is inextricably intertwined with *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), which *Janus* expressly overruled. 138 S.Ct. at 2486. *D'Agostino* cited *Abood* for the proposition that non-union public employees "have no cognizable associational rights objection" to a union's exclusive bargaining scheme, such as the one created by the Act. 812 F.3d at 243.

In *Janus*, the Supreme Court held that statutes that compel the payment of agency fees to a union that serves as the exclusive bargaining agent for all employees—both union members and non-members—violate the First Amendment rights of the non-member employees by compelling them to subsidize the union's private speech. 138 S.Ct. at 2464, 2478. The Court overruled its earlier decision in *Abood* which had reached the opposite conclusion. The Court did not consider in *Janus* whether, as Reisman claims in this case, there is a constitutional defect in statutes that authorize a union selected by a majority vote of all employees to act as the exclusive bargaining agent for the employees in collective bargaining. The *Janus*

7

opinion strongly suggests, however, that, as *D'Agostino* found, there is no constitutional defect: "It is . . . not disputed that the State may require that a union serve as exclusive bargaining agent for its employees . . . . We simply draw the line at allowing the government to go further still and require all employees to support the union irrespective of whether they share its views." *Janus*, 138 S.Ct. at 2478. Thus, although *D'Agostino* cited favorably to *Abood*, and *Abood* was overruled by *Janus*, *Janus* did not, as Reisman argues, call into question *D'Agostino's* conclusion that the First Amendment is not violated where a democratically selected union serves as the exclusive bargaining agent for all employees.

Reisman also contends that the *Knight* and *D'Agostino* decisions should be reconsidered because they did not apply the heightened level of judicial review—"exacting scrutiny"—which *Janus* indicates should be applied. 138 S.Ct. at 2465; ECF No. 38 at 17. The Court noted in *Janus* that it had in the past used exacting scrutiny in assessing issues of compelled speech and association, which requires a law to "serve a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms." 138 S.Ct. at 2465. However, in *Janus* the Court cited approvingly to federal union laws, *see, e.g.*, 5 U.S.C.A. §§ 7102, 7111(a), 7114(a) (West 2018), which allow exclusive union representation selected by a majority vote of the employees, but do not permit agency fees and characterized this approach as "significantly less restrictive of associational freedoms" than are mandated agency fees.[1] 138 S.Ct. at 2466. This is the exact

---

[1] The *Janus* decision assumed that "labor peace," meaning the "avoidance of the conflict and disruption that [*Abood*] envisioned would occur if the employees in a unit were represented by more than one union," is a compelling state interest. 138 S.Ct. at 2465. The Court cited several federal employment laws as illustrative of
*(continued next page)*

8

arrangement codified by the Act which Reisman challenges here. Thus, *Janus* itself suggests that the Act satisfies the exacting scrutiny standard.

Accordingly, *Janus* did not overrule or unsettle the *Knight* or *D'Agostino* decisions, both of which are binding precedent. The other courts which have addressed the same or similar questions since the Supreme Court's decision in *Janus* have reached the same conclusion. In *Bierman v. Dayton*, 900 F.3d 570, 574 (8th Cir. 2018), the court addressed a challenge by public homecare providers that is essentially identical to Reisman's: that exclusive union representation of non-members creates a "mandatory agency relationship" which violates their right to free association under the First Amendment. The Eighth Circuit concluded that the plaintiffs' claims were foreclosed by *Knight* which, the court held, was not superseded by *Janus*. *Id.* In another case challenging the same statute, *Uradnik v. Inter Faculty Organization*, 2018 WL 4654751 (D. Minn. Sept. 27, 2018), the court denied a preliminary injunction sought by a professor that would have enjoined the faculty union from acting as her representative and the university from treating the union as her representative. The court held that *Knight* was distinguishable from *Janus* and "broadly rejected the [professor's] First Amendment free speech arguments, indicating that the decision applies regardless of the type of speech at issue." *Id.* at *2. Furthermore, the court reasoned that even if *Janus* is construed as requiring that exclusive union representation undergo heightened judicial scrutiny, Minnesota's statute survives exacting scrutiny because the "benefits unions provide . . . are

---

the fact that labor peace has been achieved where "a union chosen by majority vote is designated as the exclusive representative of all the employees, but federal law does not permit agency fees." 138 S.Ct. at 2466.

already tailored to minimize First Amendment speech and associational harms." *Id.* at *3. The same is true of the University of Maine System Labor Relations Act.

Reisman contends that by challenging the Act's constitutionality he does not seek to prevent the Union and the Board from continuing to negotiate the terms and conditions of employment and "to apply the terms of its collective bargaining agreement to all bargaining-unit members." ECF No. 38 at 2. Rather, he challenges the Act because, as he characterizes it, the Act unlawfully "permits the Board to appoint the Union as [his] unwanted representative and agent so that it can speak on his behalf on many issues of substantial public concern." ECF No. 38 at 3. This argument mischaracterizes the Act's requirements and effect.

Under the Act, the Union was not, as Reisman asserts, appointed by the Board as his representative and agent. Instead, it was selected by a majority vote of the employees to serve as their bargaining-unit's agent. 26 M.R.S.A. § 1025. And by authorizing the Union, in its role as the agent for the bargaining-unit, to negotiate with the Board on matters related to the terms and conditions of employment, *id.* at § 1025(2)(B), the Act does not cloak the Union with the authority to speak on issues of public concern on behalf of employees, such as Reisman, who do not belong to the Union. Reisman remains free to speak out in opposition to the Union and its positions as he sees fit. His constitutional challenge to the Act thus rests on a fundamental misconception. The Union is not, as Reisman appears to believe, his individual agent. Rather, the Union is the agent for the bargaining-unit which is a distinct entity separate from the individual employees who comprise it. Because the Union is not Reisman's agent, representative, or spokesperson, the Act does not compel him, in

violation of the First Amendment, to engage in speech or maintain an association with which he disagrees.

### III. CONCLUSION

For the preceding reasons, I conclude that Reisman's complaint fails to state a claim upon which relief can be granted arising from the Act's alleged infringement of his First Amendment Rights. The Defendants' motions to dismiss (ECF Nos. 30, 33, 34) are therefore **GRANTED**. Consequently, Reisman has failed to demonstrate a likelihood of success on the merits of his claims, the key requirement for obtaining a preliminary injunction. "The *sine qua non* of [the preliminary injunction] inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002) (emphasis added). Thus, Reisman's motion for a preliminary injunction (ECF No. 5) is **DENIED**.

**SO ORDERED.**

**Dated this 3rd day of December, 2018.**

                                                  /s/ JON D. LEVY
                                            **U.S. DISTRICT JUDGE**